# Tab 1

DECLARATION OF CHAD RILEY

I, Chad Riley, do hereby declare under penalty of perjury, and with the full knowledge that willful false statements and the like are punishable by fine or imprisonment, or both (18 U.S.C. 1001), the following:

1. My name is Chad Riley and I make the following declaration based on facts personally known to me.

2. I was the Project Manager for Takota Corporation ("Takota") for Contract No. N62470-05-C-7156 with the U.S. Navy for the extension of two boat ramps and dredging at the Hancock Marina, Marine Corps Air Station Cherry Point, North Carolina (the "Contract"). My work address is: 13706 Research Blvd. #308, Austin, TX 78750.

3. I was personally involved at Cherry Point, NC in working for Takota on the Contract.

4. In order to perform the required work on the boat ramps, Takota was required to seal off certain areas of the Marina and pump out the water. Takota planned to perform this sealing by the use of temporary cofferdams.

5. To dewater, we had temporary cofferdams installed with the edges abutting the bulkheads and the bottom securely anchored. Once we started pumping water out of the containment area, we noticed that ground water was flowing into the dewatered area from behind the existing bulkhead. It appeared that water was being forced through fissures and voids that existed between the back side of the bulkhead and the earth, causing erosion to that area plus destabilization of the bulkheads themselves. It also prevented the area from becoming fully dewatered.

6. I became worried that the continued water flow would further erode and destabilize the area behind the bulkhead, possibly leading to collapse of the bulkhead walls, so I applied the

guidance from the Drawing Notes and ceased dewatering and allowed the condition to stabilize. In accordance with the Contract, on October 28, 2005, I notified the Contracting Officer that Takota was suspending work due to the differing site condition encountered and asked for direction from the government.

7. After Takota suspended work, the Navy's Project Chief Engineer attempted to tell me that the water infiltration had occurred because Takota had failed to follow the contract specification by not using sheet piling. I asked the Chief Engineer to show me where any requirement for sheet piling could be found in the Contract and, when he was unable to do so, retracted his position. The Navy then asserted a position that leakage was occurring because the temporary cofferdams 'must have been' installed incorrectly, but never offered any explanation or evidence for this conclusion. The government conducted no investigation of the conditions behind the existing bulkheads.

8. I was never aware of the government conducting any investigation of the conditions behind the existing bulkheads.

9. By November 22, 2005, the government had not provided Takota with any direction as to how to proceed in response to the suspension of work and request for direction. On that date, I sent a letter to the Contracting Officer advising that Takota would be proceeding with the work by ordering additional cofferdam to enclose just the boat ramp areas. Takota also informed the government that it would be treating this work as a constructive change brought about by the dangerous and differing site condition.

10. On November 28, 2005, Takota was advised by the Assistant Resident Officer in Charge of Construction ("AROICC") that work could not proceed until after any equitable adjustment requests were presented to and approved by the ROICC Office. I immediately confirmed in writing that the government was directing Takota to stop work pending submission and review of a Request for Equitable Adjustment.

11. On December 7, 2005, I attended a "Mutual Understanding Meeting" the AROICC had convened to discuss the project with Takota and government representatives. We discussed different methods to repair the bulkheads and area behind them so the work could continue. During those

discussions, the Navy and Takota agreed that excavating behind the bulkhead and filling the trench with concrete was an approach that could be used to correct the problem.

12. Since the bulkheads themselves and the earth behind them were shown on the Contract drawings as outside the limits of construction and since the Contract specification included no repair of the bulkheads or supporting earth, Takota approached the need for repairs as extra work under the Contract. Takota attempted to price out the scope of work needed to perform the additional work. By letter dated December 21, 2005, Takota notified the Contracting Officer that we could not provide a "precise" estimate to perform the repairs necessary to the bulkhead so that dewatering could occur. However, Takota also informed the Navy that the concrete trench solution would cost at least $300 per cubic yard plus $2,300 per day for a dive team, plus the cost of any materials for the bulkhead repair.

13. On March 7, 2006, Takota received a directive from the Contracting Officer directing Takota to resume work on the project. Despite all our correspondence and several meetings with the Navy's project support staff, this direction from the Contracting Officer was the <u>first direction received</u> by Takota from the CO following Takota's October 28, 2005 suspension of work and request for direction.

14. As a part of that directive from the Contracting Officer, Takota was required to re-submit many of its already-submitted and approved submittals. I assisted Takota in complying with the Contracting Officer's directive to begin re-submitting documents and attemptingto have our geotechnical engineers come on site to address the dewatering issue. Takota was instructed by the Navy, however, that no work was permitted at the site until all submittals had been tendered and approved.

I declare under penalty of law that the foregoing is true and correct.

DATED: 4/25/08 [signature]

# Tab 2

## GENERAL NOTES:

1. CONTRACTOR SHALL ESTABLISH LAYDOWN AREA IN COORDINATION WITH CONTRACTING OFFICER AND MCCS. LAYDOWN AREA TO BE ADJACENT TO LAGOON AND BOAT STORAGE AREA UNLESS SPECIFICALLY STATED OTHERWISE. PROJECT LIMITS EXTEND TO EDGE OF ASPHALT ACCESS ROAD AND CONTRACTOR WORK AREA IS ENTIRE AREA INSIDE AREA BOUNDED BY ACCESS ROAD, HANCOCK CREEK, WOODED AREA, AND REPARIAN BUFFER LIMITS.
2. CONSTRUCTION AREAS SHALL BE DEWATERED PRIOR TO CONSTRUCTION. NO CONSTRUCTION SHALL TAKE PLACE IN THE WET.
3. DEWATERING THE LAGOON WILL CAUSE A SIGNIFICANT UNBALANCED LOAD CONDITION OF THE ALREADY DETERIORATING STEEL SHEET PILE BULKHEAD (SEAWALLS). CONTRACTOR SHALL MONITOR ALL EXISTING BULKHEAD (SEAWALLS) DURING THE DEWATERING AND CONSTRUCTION PROCESSES. SHOULD SIGNS OF MOVEMENT OR ADDITIONAL DETERIORATION BE OBSERVED, THE CONTRACTOR SHALL PROVIDE SAFE AND ADEQUATE SHORING AND CONTACT CONTRACTING OFFICER FOR FURTHER DIRECTION.
4. NO TREES SHALL BE REMOVED UNLESS SPECIFICALLY STATED OTHERWISE.
5. NO MORE THAN ONE ACRE SHALL BE DISTURBED DURING CONSTRUCTION.
6. BOAT RAMP #2 IS LOCATED IN AN AREA OF KNOWN CONTAMINATION. IF ANY SOIL WHICH EXHIBITS AN ABNORMAL OR UNNATURAL COLOR, A CHEMICAL OR PETROLEUM ODOR, OR IS SATURATED WITH A CHEMICAL OR PETROLEUM IS ENCOUNTERED DURING EXCAVATION, CONTRACTOR SHALL STOP WORK IMMEDIATELY AND CONTACT THE CONTRACTING OFFICER.
7. CONTRACTOR SHALL RESTORE/REPLACE ALL SIGNS ENCOUNTERED.
8. CONTRACTOR SHALL INSTALL MEASURES AS NECESSARY DURING CONSTRUCTION FOR SEDIMENTATION AND EROSION CONTROL.
9. ALL DISTURBED SOIL SHALL BE COMPACTED. ALL DISTURBED SOIL IN THE LAGOON (BASIN) SHALL BE COMPACTED PRIOR TO REFILLING THE LAGOON.
10. REQUIREMENTS FOR CONSTRUCTION SITE OPERATORS TO CONTROL WASTE SUCH AS DISCARDED BUILDING MATERIALS, CONCRETE TRUCK WASHOUT, CHEMICALS, LITTER, AND SANITARY WASTE AT THE CONSTRUCTION SITE THAT MAY CAUSE ADVERSE IMPACTS TO WATER QUALITY:
    - A. HAZARDOUS WASTE AND MATERIAL SUCH AS CEMENT MUST BE PROPERLY MANAGED TO PREVENT STORMWATER CONTAMINATION IN THE EVENT OF A SPILL.
    - B. DEMOLITION AND CONSTRUCTION ACTIVITY MATERIAL/WASTE MUST BE DISPOSED ACCORDINGLY. CONCRETE WASHOUT SHOULD NOT BE ALLOWED TO INFILTRATE THE GROUND.
    - C. STAGED MATERIAL NEED TO BE PROPERLY MANAGED TO PREVENT STORMWATER CONTAMINATION.




GRAPHIC SCALE

20 0 10 20 40 80

( IN FEET )
1 inch = 20 ft.

| | | | | |
|---|---|---|---|---|
| SYM. | | DESCRIPTION | DATE | APPR |

Dewberry

Dewberry & Davis, Inc.
2301 REXWOODS DRIVE
SUITE 200
RALEIGH, NC 27607
PHONE: 919.881.9939
FAX: 919.881.9923

NORTH CAROLINA PROFESSIONAL ENGINEER SEAL 028832 SHEILA STALLINGS REEVES 04/05/05
SEAL

APPROVED

ACTIVITY – SATISFACTORY TO

DATE

APPROVED

FOR EFD FOR COMMANDER NAVFAC

DATE

| A/E | | EFD |
|---|---|---|
| SSR | DESIGN | |
| RSM | DRAWN | |
| CHB | REVIEW | |
| CHB | QC | |
| | CHIEF ARCH./ ENGR. | |
| | PROJECT MANAGER | |
| | FIRE PROTECTION | |
| | BRANCH MANAGER | |
| | DESIGN DIRECTOR | |

DEPARTMENT OF THE NAVY NAVAL FACILITIES ENGINEERING COMMAND
MARINE CORPS AIR STATION, CHERRY POINT, N.C.

EXTEND BOAT RAMPS AT HANCOCK MARINA

DEMOLITION PLAN

| | |
|---|---|
| CODE ID. NO. 80091 | SIZE D |
| SCALE: AS SHOWN | |
| FED NO. 5823 | |
| STA. PROJ. NO. CP04500R | |
| SPEC. NO. 05057156 | |
| CONSTR. CONTR. NO. N62470-05-C-7156 | |
| NAVFAC DRAWING NO. 4505769 | |
| SHEET 4 OF 10 | |
| C-03 | |

02018.10




## CONSTRUCTION SEQUENCE

1. INSTALL SILT FENCING AND CHECK DAMS AS SHOWN ON THE APPROVED PLAN. CONTRACTOR SHALL NOT REMOVE ANY TREES DURING THE INSTALLATION OF THESE DEVICES. CLEAR ONLY AS NECESSARY TO INSTALL THESE DEVICES.
2. INSTALL TURBIDITY CURTAIN THEN COFFER DAMS IN THE WATER, AS SHOWN ON PLANS.
3. THE AREA ENCLOSED BY THE COFFER DAM SHALL BE DEWATERED PRIOR TO CONSTRUCTION/DEMOLITION BY MEANS THAT PREVENT/MINIMIZE EROSION. BULKHEADS (SEAWALLS) SHALL BE CAREFULLY MONITORED DURING DEWATERING PROCESS. CONTRACTOR SHALL PROVIDE ADEQUATE SHORING/BRACING FOR BULKHEADS (SEAWALLS). SHOULD SIGNS OF WEAKENING OR MOVEMENT OF BULKHEADS BE OBSERVED, CONTRACTOR SHALL PROVIDE ADDITIONAL SHORING, SHALL STOP DEWATERING PROCESS, AND SHALL CONTACT CONTRACTING OFFICER FOR FURTHER DIRECTION.
4. DEMOLISH EXISTING DOCKS AND BOAT RAMPS ACCORDING TO SHEET C-03.
5. CONSTRUCT AND COMPLETE NEW RAMPS AND DOCKS.
6. CONTRACTOR SHALL GRADE AND COMPACT AREA WITHIN THE DEWATERED ZONE(S). NO SEED OR MULCH SHALL BE APPLIED WITHIN THE DEWATERED AREA.
7. CONTRACTOR SHALL GRADE, SEED AND MULCH UPLAND DISTURBED AREAS WITHIN 15 DAYS OF DISTURBING.
8. THE CONTRACTOR SHALL MAINTAIN THE DEVICES ACCORDING TO THE NORTH CAROLINA EROSION AND SEDIMENT CONTROL PLANNING AND DESIGN MANUAL.
9. DEWATERED AREAS SHALL BE REFILLED BY CONTROLLED MEANS SUCH AS TO PREVENT EROSION AND SEDIMENT SUSPENSION. COFFER DAM(S) ARE TO BE REMOVED AFTER REFILLING OF DEWATERED AREAS. TEMPORARY TURBIDITY CURTAINS SHALL BE REMOVED AFTER COFFER DAM REMOVAL IS COMPLETE AND ANY SIGNIFICANT SEDIMENT DISTURBED AS A RESULT OF THESE ACTIVITIES HAS SETTLED.
10. AFTER DISTURBED AREAS ARE PROPERLY STABILIZED, AS APPROVED BY THE CONTRACTING OFFICER, THE CONTRACTOR SHALL REMOVE THE TEMPORARY DEVICES AND PROPERLY DISPOSE OF THE TRAPPED SEDIMENT. THE CONTRACTOR SHALL STABILIZE UPLAND AREAS DISTURBED DURING THE REMOVAL OPERATION BY APPLYING SEED AND MULCH, ACCORDING TO THE SEEDING SCHEDULE AS LISTED IN SPECIFICATIONS.

| DOCK | OVERALL DOCK LENGTH (H) |
|---|---|
| A | 32.0' |
| B | 52.5' |
| C | 38.0' |

GRAPHIC SCALE

( IN FEET )
1 inch = 20 ft.

Dewberry
Dewberry & Davis, Inc.

NORTH CAROLINA PROFESSIONAL ENGINEER SEAL 028832 SHEILA STALLINGS REVES

DEPARTMENT OF THE NAVY
NAVAL FACILITIES ENGINEERING COMMAND
MARINE CORPS AIR STATION, CHERRY POINT, N.C.

EXTEND BOAT RAMPS AT HANCOCK MARINA

SITE PLAN

A/E: SSR DESIGN; RSM DRAWN; CHB REVIEW; CHB QC

CODE ID. NO. 80091 SIZE D
SCALE: AS SHOWN
FED NO. 5823
STA. PROJ. NO. CP04500R
SPEC. NO. 05057156
CONSTR. CONTR. NO. N62470-05-C-7156
NAVFAC DRAWING NO. 4505770
SHEET 5 OF 10
C-04

# Tab 3

**Crite, Antoine LTJG NAVFAC Lant**

**From:** Chad Riley [chad@takota.com]
**Sent:** Friday, October 28, 2005 12:53 PM
**T** Gillen, Conrad CIV NAVFAC Lant
**C** Crite, Antoine ENS NAVFAC Lant; Doug Reitmeyer; Art
**Subject:** Stop work on Extend Boat Ramps Hancock Marina

Conrad Gillen,

Per our conversation yesterday, Takota Corporation is stopping work at the Hancock Marina as of 10-27-05 due to differing site conditions. When dewatering we are experiencing water flow behind the bulkhead/sheet piles from the top of our temporary coffer dams into the work area. As the pressure increases on the top side of the temporary coffer dams the water flow behind the sheet piles increases thus creating several problems, erosion behind the sheet piles which will put the bulkhead in jeopardy and increases the flow of water into the work area and dewatering becomes unmanageable.

At this time Takota Corporation is asking for direction from your office. Let me know if you have any questions.

Chad Riley
Project Manager
Takota Corporation
512-845-2665

# Tab 4

Takota Corporation
3017 Palm Springs Way
Las Vegas, NV 89102
Phone 877-871-0145
Fax 800-665-6693

November 2, 2005

Department of the Navy
Marine Corps Air Station
PSC Box 8006
Cherry Point, NC 28533-0006

SUBJ: Stop Work Contract N62470-05-C-7156, Extend Boat Ramps At Hancock Marina

Dear Contracting Officer,

Takota Corporation is notifying you of a differing site condition, related to erosion behind existing metal sheet piles and bulkhead, which is causing water flow from the top of our coffer dams into the dewatered work area. With assistance from our Geotechnical Engineer, Takota Corporation will be conducting an investigation to determine potential solutions to the above described differing site condition. Takota Corporation will be submitting a claim for any and all additional cost that arise while dewatering the site due to this changed condition.

Takota Corporation considers the erosion problem to have an adverse impact to the bulkhead. In accordance to the contract procedures we are stopping work until further direction. I suggest that we conduct a meeting to discuss the above issues and will be available at your convenience.

Thank you,

Chad Riley
Project Manager
Takota Corporation
512-845-2665

cc: Mr. Robert J. Symon, Attorney

# Tab 5

# CONTRACTOR PRODUCTION REPORT

(ATTACH ADDITIONAL SHEETS IF NECESSARY)

DATE: 10/27/2005

| ONTRACT NO. | TITLE AND LOCATION | report number |
|---|---|---|
| N624670-05-C-7156 | *Extend Boat Ramp at Hancock Marina Cherry Point NC.* | 21 |

| CONTRACTOR | SUPERINTENDENT |
|---|---|
| *TAKOTA CORPORATION* | *Chad Riley* |

| AM WEATHER | PM WEATHER | MAX TEMP: | MIN TEMP: |
|---|---|---|---|
| *CLOUDY* | *sunny* | *69* | *55* |

## WORK PERFORMED TODAY

| WORK LOCATION AND DESCRIPTION | EMPLOYER | NUMB | TRADE | HOURS |
|---|---|---|---|---|
| see notes below | Takota | | super | 8 |
| pull wire to light poles | Larabee | | Electrician | 0 |
| | | | Electrician | 0 |
| | | | owner | 8 |
| reinstall tarp on port a dam frame, see notes below | Port a dam | | labor | 8 |
| | | | labor | 8 |
| | | | labor | 8 |

## JOB SAFETY

| | | |
|---|---|---|
| WAS A JOB SAFETY MEETING HELD THIS DATE? (If YES attach copy of the meeting minutes) | ☐ YES ☒ NO | TOTAL WORK HOURS ON JOB SITE THIS DATE: 40 |
| WERE THERE ANY LOST TIME ACCIDENTS THIS DATE? (If YES attach copy of OSHA report) | ☐ YES ☒ NO | CUMULATIVE TOTAL OF WORK HOURS FROM PREVIOUS REPORTS: 541.5 |
| WAS TRENCHING/SCAFFOLD/HV ELECTRICAL/HIGH WORK DONE? (If YES attach statement of showing inspection performed) | ☐ YES ☒ NO | |
| WERE THERE ANY NEAR MISS ACCIDENTS THIS DATE? (If YES attach description of incident and proposed action) | ☐ YES ☒ NO | TOTAL WORK HOURS FROM START OF CONSTRUCTION: 581.5 |

LIST SAFETY ACTIONS TAKEN TODAY/SAFETY INSPECTIONS CONDUCTED — X SAFETY REQUIREMENTS HAVE BEEN MET

EQUIPMENT/MATERIAL RECEIVED TODAY TO BE INCORPORATED IN JOB

CONSTRUCTION AND PLANT EQUIPMENT ON JOB SITE TODAY INCLUDE NUMBER OF HOURS USED TODAY

Kobelco SK330 #599095(1hr), Kobelco SK330 #430497, 6" Pump Diesel, 17' Fish Carolina Skiff (5hrs).

*REMARKS:*

Water is coming into the dewater area from behind the sheet piles. Called the gov today to let them know we are stoping work untill futher notice, followed up with emial to Gillen and Crite.

Chad Riley DATE

# Tab 6

**Crite, Antoine LTJG NAVFAC Lant**

**From:** Chad Riley [chad@takota.com]
**ent:** Wednesday, November 09, 2005 4:37 PM
**T** Temple, Marsha G CIV LANT ROICC Cherry Point
**C.** Doug Reitmeyer; Art Caprario; Symon, Robert; Crite, Antoine LTJG NAVFAC
**Subject:** RE: Hancock Marina, Extend Boat Ramps

Marsha,

The letter was sent to you in response to a series of meetings and emails between me and your representatives, Antoine Crite, Conrad Gillen, and H.J. Hendricks. I will forward you the emails for your review.

After sharing the bulkhead and dewatering differing site conditions, that are causing the stoppage of work, with Chief Engineer H.J. Hendricks last week he referred me to a section of the contract titled sheet piles and told me that I was not In compliance with the contract due to failure to submit a sheet pile plan for approval from the Government and basically he expressed that Takota Corporation was liable for correcting the differing site conditions. I brought to his attention that there was no mention of a sheet pile section and asked him to please show me where I was mistaken. After he reviewed the contract he told me that he had mistaken and that the section was meant to be in the contract but for whatever reason it was left out. In addition it clearly states in the contract to stop work if the bulkhead shows signs of weakening.

In very simple terms the section, "sheet piles," that was intended to be in the contract, but left out, is the section that would direct Takota Corporation, and apply directly to the problems we are experiencing now.

Work has been stopped for 14 days now and I have not gotten any direction from your office. Until we get clear and written direction we will not be working on this contract. I am working on a few potential solutions to the problems; if you and your team are interested I will be available at your convenience. Let me know.

Chad Riley

---

Temple, Marsha G CIV LANT ROICC Cherry Point [mailto:marsha.temple@navy.mil]
**S.** Wednesday, November 09, 2005 9:55 AM
**To:** Chad Riley
**Subject:** RE: Hancock Marina, Extend Boat Ramps

Yes, I have read the letter but LT(jg) Crite is the person you will be discussing this with. The Contracting Officer only gets involved if issues cannot be resolved. Lt Crite will be back in the office on Thursday.

*Marsha G. Temple*
Contract Specialist
Resident Officer in Charge of Construction
Marine Corps Air Station, Cherry Point
Tel: (252) 466-4751 FAX: (252) 466-5749
E-mail: marsha.temple.@navy.mil

> -----Original Message-----
> **From:** Chad Riley [mailto:chad@takota.com]
> **Sent:** Wednesday, November 09, 2005 10:53
> **To:** Temple, Marsha G CIV LANT ROICC Cherry Point
> **Subject:** Hancock Marina, Extend Boat Ramps
>
> Marsha,
>
> Did you get a chance to review the letter I sent you on Monday? I would like to discuss these issues on the phone if you have time. We have some proposed solutions to the issues that are mentioned in the letter and I'm eager to share them with the Government. I am available any time on my cell phone number below. I do not have a phone number for you; if you like you can email me your phone number. I look forward to speaking with you soon.
>
> Take care,