**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TAKOTA CORPORATION | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No.: 06-553 C |
| | ) | (Judge Bruggink) |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO AMEND PLEADINGS**

NOW COMES Plaintiff Takota Corporation, by counsel, and pursuant to RCFC 15(a) moves the Court to allow an Amended Complaint to be filed in the above-captioned matter and in support thereof respectfully states:

1. This case involves, *inter alia*, Plaintiff's appeal of a contracting officer's final decision to terminate for default a Navy contract (No. N62470-05-C-7156) to extend boat ramps at the Hancock Marina, Marine Corps Air Station, and Cherry Point, NC. The termination for default was issued by the contracting officer on May 24, 2006. This action was filed in the Court on July 31, 2006.

2. At the time the action was filed, the contracting officer had not made any claim against Plaintiff for excess reprocurement costs allegedly arising from any reprocurement of the effort for which Takota was terminated.

3. Subsequently, by a final decision dated August 6, 2007, the contracting officer notified Takota that excess reprocurement costs and liquidated damages totaling $343,800 were being assessed against Plaintiff.

4. Plaintiff contests the contracting officer's assessment of excess reprocurement costs and liquidated damages as to their applicability, amount, and legality, and seeks to amend its Complaint in this matter to incorporate an appeal of the contracting officer's final decision

and place it before the Court for adjudication. As the assessment of excess reprocurement costs and liquidated damages flows directly from the termination for default, amending the pleadings to incorporate Plaintiff's appeal serves the purpose of judicial economy by consolidating all inter-related issues into the same proceeding.

5. Additionally, given the recent holding of the United States Court of Appeals for the Federal Circuit in *Renda Marine v. United States*, Docket No. 2006-5127, decided December 11, 2007, amendment of the pleadings to incorporate Plaintiff's challenge to the contracting officer's actions is necessary in order to prevent any ripening of the contracting officer's actions into a "decision [that] becomes impervious to any substantive review." *Id.* at p. 15.

6. Counsel for the United States has no objection to Takota's amending its Complaint.

WHEREFORE, Plaintiff respectfully requests the Court grant leave for Plaintiff to file the attached First Amended Complaint, and grant such and other relief as is just and equitable.

Dated: July 29, 2008

Respectfully submitted,

/s Robert J. Symon

Robert J. Symon
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W.
12th Floor
Washington, D.C. 20036
(202) 393-7150 (phone)
(202) 347-1684 (facsimile)

Attorney for Plaintiff
TAKOTA CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of July, 2008, a true and correct copy of the foregoing Plaintiff's Motion to Amend Pleadings and Plaintiff's First Amended Complaint and Request for Declaratory Judgment were served by electronic transmission to:

Jane C. Dempsey, Esq.
U.S. Department of Justice
1100 L St., NW, Room 12138
Washington, DC 20005
E-mail: Jane.Dempsey@usdoj.gov

*Counsel for the United States*

/s Robert J. Symon
ROBERT J. SYMON

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **TAKOTA CORPORATION** **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | No. 06-553 C |
| | ) | (Judge Bruggink) |
| **THE UNITED STATES** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**FIRST AMENDED COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT**

Plaintiff, Takota Corporation, by the undersigned counsel, files this First Amended Complaint against the United States, and alleges as follows:

**Jurisdictional Statement and Parties**

1. Jurisdiction is conferred by 28 U.S.C. § 1491.

2. This action is brought pursuant to the provisions of 41 U.S.C. § 609, and seeks conversion of a default termination of a Contract between the parties (pursuant to a Final Decision of the Contracting Officer dated May 24, 2006) to a termination for the convenience of the government; and seeks denial of the contracting officer's final decision (dated August 6, 2007) assessing liquidated damages and excess reprocurement costs as improper, both as to liability and quantum.

3. Plaintiff, Takota Corporation ("Takota") is a Nevada corporation with its principal place of business in Nevada.

4. Defendant, the United States, acting by and through the Department of the Navy, a federal agency, is a body politic authorized by law to enter into contracts for the procurement of goods and services.

5. On or about July 22, 2005, the United States, acting through a Contracting Officer of the Department of the Navy ("Navy"), executed a fixed-price contract in the amount of $463,000.00 with Takota, Contract No. N62470-05-C-7156 (hereinafter the "Contract"), for Takota to remove and replace boat ramps and docks at Hancock Marina, Marine Corps Air Station, Cherry Point, North Carolina.

6. The Contract completion date was one hundred fifty (150) calendar days after receipt of the award, *i.e.*, a completion date of January 3, 2006.

**Discovery of a Differing Site Condition**

7. Early in the project, Takota installed two cofferdams to trap the water in the lagoons to commence "dewatering," which would permit work on the docks. Takota attempted to dewater the lagoon areas but discovered the rapid inflow of water into those areas through openings in the seawalls when the water level was lowered. Thus, the lagoon areas could not be properly dewatered to a level desired for construction work. The situation also raised safety issues over the stability of the seawalls.

8. Takota promptly employed divers to observe both the seawalls and the integrity of the cofferdams. Takota also retained the services of a geotechnical engineering firm to investigate the situation. The divers determined that significant amounts of water were flowing from behind the seawalls that encased the perimeter of the lagoons. The geotechnical engineering firm, QORE Property Sciences, confirmed that the project could not be completed unless substantial changes were made to the construction site to stop the inflow of water from behind the seawalls.

9. By e-mail dated October 28, 2005, Takota informed the Navy that it was "stopping work … due to differing site conditions." Takota described the difficulties it was experiencing in its efforts to dewater the work areas.

10. By letter dated November 2, 2005, Takota formally put the Navy on written notice of the differing site condition. In its letter, Takota relayed the findings of the divers and QORE, describing the condition as "related to erosion behind existing metal sheet piles and bulkhead, which is causing water flow from the top of our cofferdams into the dewatered work area." Takota also informed the Navy that it was suspending work "until further direction" from the Contracting Officer after completion of an investigation pursuant to FAR 52.236-2(b).

11. The Contracting Officer failed to properly investigate the condition and provide direction to Takota. Instead of discharging this responsibility, the Contracting Officer, without any engineering analysis, investigation, or evidence, arbitrarily claimed that the seepage of water into the work areas was caused by Takota's failure to properly install the cofferdams.

**Direction to Proceed Without Addressing Differing Site Condition or Granting Time Extension**

12. On March 7, 2006, more than four months after Takota put the Navy on notice of the differing site condition; the Contracting Officer denied the existence of a differing site condition and directed Takota to proceed with the work required by the Contract. The Navy failed to extend the completion date to account for the delays associated with its investigation the differing site condition. Instead, the Navy threatened Takota with potential default and liquidated damages for failing to meet the January 3, 2006 completion date.

13. After receiving direction to proceed, Takota re-commenced performance but, due to the differing site condition and lack of government direction, was forced to develop a plan or design to fix the seawalls so that dewatering efforts would lower the level of the waters in the

lagoon to accommodate the construction work. In the interim, Takota transmitted various and sundry submittals required by the Contract for the Navy's review and approval.

**Show Cause Notice and Other Issues**

14. On April 20, 2006, despite Takota's stated process to proceed with performance and in the absence of a revised contract completion date, the Contracting Officer issued a Show Cause Notice directing Takota to submit a written explanation as to why the Navy should not terminate the contract for default due to Takota's untimely performance.

15. By letter dated May 2, 2006, Takota responded to the Show Cause Notice, providing a comprehensive response to the issues raised by the Contracting Officer's show cause correspondence. Among other things, Takota reminded the Contracting Officer of her failure to properly investigate and identify the differing site condition.

**Termination for Default**

16. On May 24, 2006, the Navy issued Modification P00001, which was a Notice of Termination of Takota's right to proceed under the Contract.

17. The Navy's default termination of Takota's right to proceed was wrongful and arbitrary due to the Navy's failure to properly investigate and identify the differing site condition and to extend the contract completion date to account for the Navy's delay investigating the differing site condition as well as Takota's efforts to design a remediation plan for this differing site condition.

**Excess Reprocurement Costs**

18. On August 6, 2007, the Contracting Officer issued a Final Decision purporting to assess a claim against Takota for $343,800. The Contracting Officer's claim includes excess reprocurement costs of $250,800 and liquidated damages in the amount of $93,000.

19. The Contracting Officer's termination of Takota's contract was wrongful and arbitrary, which renders the claim for liquidated damages and excess reprocurement costs illegal.

20. Alternatively, and to the extent that the Court does not overturn Takota's wrongful termination for default, Takota's liability for excess reprocurement costs must be limited by the following:

a. Takota's Contract was terminated by the Navy on May 24, 2006. The Navy awarded a follow on contract to complete the work on September 28, 2006. In calculating its claim for liquidated damages, the Navy has wrongfully claimed liquidated damages for periods beyond the scope of Takota's contract performance period.

b. Alternatively, to the extent that the Navy may be allowed to assess liquidated damages during the post-performance period, Takota cannot be held liable for the time period between contract termination (May 24, 2006) and the Navy's award to a replacement contractor (September 28, 2006).

c. The award value of Takota's contract was $463,000.00. The award value of the replacement contract was $713,800.00, clearly an excessive amount to perform less than the original scope of work. Whether award of the replacement contract was made without adequate competition, for an increased scope of work, or simply without regard to cost, Takota should not be liable for the Navy's lack of diligence in mitigating costs.

. WHEREFORE, Plaintiff requests that the Court declare that the government's termination of the Contract was wrongful and convert it to a termination for convenience and deny the

Contracting Officer's claim for assessment of liquidated damages and excess reprocurement costs.

Dated: July 29, 2008

Respectfully submitted,

/s Robert J. Symon

Robert J. Symon
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W.
12th Floor
Washington, D.C. 20036
(202) 393-7150 (phone)
(202) 347-1684 (facsimile)

Attorney for Plaintiff
TAKOTA CORPORATION