# In the United States Court of Federal Claims

No. 06-553C
(Filed: December 14, 2009)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
TAKOTA CORPORATION,

                *Plaintiff*,

v.

THE UNITED STATES,

                *Defendant*.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Pending in this contract action is plaintiff's motion for sanctions pursuant to Rule 11 of the Rules of the Court of Federal Claims ("RCFC"). Plaintiff, Takota Corporation ("Takota"), has moved for sanctions against the government's counsel in regard to an affirmative defense raised by the government alleging fraud by Takota. The matter is fully briefed and we deem oral argument unnecessary. For the reasons set out below, plaintiff's motion is denied. Because we have already granted defendant's motion for summary judgment, the case is now dismissed.

## BACKGROUND[1]

This case arises from a contract calling for the extension of two boat ramps and dredging at the Hancock Marina, Marine Corps Air Station, Cherry Point, North Carolina. Takota was awarded the contract during the summer of

---

[1] For a more thorough recitation of the facts giving rise to this case, see *Takota v. United States*, __ Fed. Cl. __, 2009 WL 3574132 (2009). That opinion did not discuss the allegation of fraud, which the government had withdrawn. Any additional facts pertinent to this order will be included in the discussion section.

1

2005, and was terminated for default approximately ten months later. Takota subsequently filed suit in this court, seeking to have the termination for default converted into a termination for convenience. In April of 2007, after filing suit, Takota submitted a settlement claim to the contracting officer, seeking $502,245 for costs associated with the allegedly wrongful termination. After performing an audit of this claim, the Defense Contract Audit Agency questioned $291,191 of the costs sought.[2] At that time, Takota's motion for partial summary judgment was pending before the court. In its response and cross-motion for summary judgment, the government asserted an affirmative defense, alleging that Takota had committed fraud in certifying and submitting three progress invoices during the course of construction.[3]

At plaintiff's request, the parties jointly moved to stay discovery pending the court's ruling on summary judgment. The government subsequently moved to stay all further action in this proceeding while the Defense Office of Inspector General, Defense Criminal Investigation Service ("DCIS") and the Naval Criminal Investigation Service ("NCIS") considered whether there were sufficient grounds to warrant a criminal fraud investigation. We granted a six-month stay, and later continued this stay for an additional two months. In subsequent briefing on the cross-motions for summary judgment, the government withdrew its affirmative defense of fraud, purportedly to avoid impairing any impending criminal investigation. After hearing oral argument on the cross-motions, we granted summary judgment for the government, holding as a matter of law that Takota's failure to comply with contract specifications justified the termination for default. Prior to our release of the opinion granting summary judgment, Takota filed the motion for sanctions currently before the court.

DISCUSSION

The primary goal of Rule 11 sanctions is to deter baseless filings and to streamline the administration and procedure of the federal courts. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1989). To that end, Rule 11 requires "[e]very pleading, motion, or other paper" to be signed by the party's

---

[2] The audit report did not question Takota's proposed subcontract costs. These costs form the gravamen of the government's fraud defense.

[3] *See* Def. App. Tabs 19, 32, 69. Two of these documents are different versions of Takota's first payment application, which was originally rejected, revised, and resubmitted. *See infra* note 7.

attorney. RCFC 11(a). By this signature, an attorney certifies that the pleading has a basis in fact and law, and is not filed for an improper purpose. RCFC 11(b). Of particular pertinence here, the rule mandates an attorney certify that to the best of his knowledge, information, and belief based on a reasonable inquiry:

> (1) [the pleading or other paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

*Id*. The rule vests the court with discretion to impose sanctions when an attorney's conduct falls below the requisite standard. RCFC 11(c)(1). The decision to impose sanctions rests firmly within the discretion of the court. *See A. Hirsh, Inc. v. United States*, 948 F.2d 1240, 1246 (Fed. Cir. 1991). Here, we express no opinion and need not decide the underlying question of Takota's conduct. Rather, we only examine whether the government's inquiry into its affirmative defense was "reasonable under the circumstances." *See* RCFC 11(b).

Takota asserts that sanctions are appropriate under RCFC 11(b)(1) and 11(b)(3). Specifically, Takota argues that the government's defense lacks evidentiary support and is presented solely to intimidate Takota and increase the cost of litigation." Pl.'s Mem. at 2, 8.[4] We shall consider each of these arguments in turn.

*I. Evidentiary support for the government's affirmative defense.*

The government's affirmative defense revolved around the alleged relationship between Takota and two subcontractors: Montemayor, Inc. ("Montemayor") and United Rentals, Inc. ("United Rentals"). The government

---

[4] Takota simultaneously filed two documents, both titled "Motion for Sanctions." Because the second is in essence a memorandum in support of the motion, we shall refer to it thus.

contended that Takota committed fraud when, in three payment applications, it certified that it had or would pay its subcontractors and suppliers, but failed to do so with respect to these two parties. In response, Takota maintains three points: (1) the supposed subcontracts never existed, (2) no payment was due to the alleged subcontractors at the time of Takota's payment applications, and (3) Takota's pay applications did not request payment for work done by the supposed subcontractors. In regard to all three points, Takota contends that the "slightest inquiry" or examination of the evidence would have shown the lack of evidentiary support. Having reviewed the evidence, we cannot agree that the government's allegation was so utterly lacking in evidentiary support as to be sanctionable.

### A. The existence of the alleged subcontracts.

Takota denies it ever entered a subcontract with Montemayor and asserts that its direct relationship with United Rentals began only after the period covered by the relevant pay application.[5] Accordingly, Takota asserts that because it had no contractual relationship—either direct or indirect—with either party during the relevant time period, it did not fraudulently certify its pay applications.

The evidence, however, provides grounds for a reasonable inference that Takota had a subcontract with Montemayor and thus, by proxy, had contractual obligations to United Rentals. For example, an internal Takota email refers to "Montemayor's contract for the Cherry Point job" and states that Montemayor "are partners of Takota for this project and will be treated the same as if they were part owners." Def. App. Tab 5. In the same email, Takota indicated its willingness to pay any bills Montemayor incurred from its suppliers. *Id.* In addition, Montemayor prepared and submitted various required pre-construction documents. *See id.* at Tab 6. Three of Montemayor's employees attended the preconstruction meeting. *See id.* at Tab 8. An email from Montemayor to Takota notes that the attached document "was signed with the subcontract." *Id.* at Tab 18.

In response, Takota points to an internal email stating "[t]his subcontract has been cancelled," *see id.*, claiming this proves there was no subcontract, but ignoring the reasonable implication that, to be cancelled, a

---

[5] Takota acknowledges that during the period of time at issue, United Rentals acted as a supplier to Montemayor.

4

subcontract previously existed. We need not resolve the factual question of whether a subcontract existed. Rather, we only need to determine whether the government's defense was a plausible claim based on a reasonable inquiry. We cannot say that the government was so lacking in evidence that its conduct is sanctionable.

### B. *Payment due at the time of Takota's payment application.*

Takota also contends no payment was due to the alleged subcontractors at the time Takota submitted its pay applications. In support of this argument, Takota merely repeats the previous one: that because there was no subcontract, no payment could have been due to the alleged subcontractors during the relevant period of time. As we previously discussed, however, the evidence supports a reasonable inference that Takota may have had a contractual relationship with the alleged subcontractors. Thus, the government's inference is not so egregious as to warrant sanctions.

### C. *Items included in Takota's payment application.*

Takota next argues that it is clear from the payment applications that Takota never invoiced the government for work or services performed by Montemayor or United Rentals, thus no payment was due to them. Takota argues that "[i]f a contractor has not invoiced the government for any particular aspect of work performed by a subcontractor, then there is no payment due to that subcontractor from the Government payment." Pl.'s Mem. at 6. Be that as it may, we do not agree that the evidence is as patently clear as Takota claims. Thus, the government's defense was not so unreasonable as to merit sanctions.

As an initial matter, we do not agree that "[it] is absolutely clear on the face of the payment applications" that Takota did not invoice the government for work performed by the alleged subcontractors. *See id.* Although none of the payment applications expressly mention the alleged subcontractors, this fact standing alone is hardly dispositive.[6] Nor can we agree that Takota's

---

[6] We note by way of example that the November 23, 2005 payment application seeks $78,500 for "Coffer Dams Delivered and installed," but does not name Portadam, Inc. or Hydrological Solutions, Inc., the suppliers of the coffer dams. Def. App. Tab 32.

"Termination for Convenience Settlement Proposal" is so clear as to make the government's defense patently baseless.

Additional evidence lends support to the inference that Takota invoiced the government for costs incurred by Montemayor and United Rentals. Specifically, on September 26, 2005, Montemayor invoiced Takota $28,222.22 for costs related to mobilization. Def. App. Tab 12. Shortly thereafter, in Takota's first payment application, dated October 4, 2005, Takota included a line item seeking $27,000 for "Mobilization."[7] Def. App. Tab 69. Takota contends that this amount was merely a portion of the costs that Takota itself had incurred during mobilization. While this may be true, we cannot say the government was without any foundation for its inference that Takota was seeking to recover for the work billed by Montemayor. Furthermore, Takota admits, and its daily construction reports confirm, that from October 8–24, 2005, four Montemayor employees were present on the job site.[8] *See* Pl.'s Resp. to Def.'s Proposed Findings of Uncontroverted Facts 14–15. In addition to general supervisor and foreman duties, these employees installed the turbidity barrier, an item for which Takota invoiced the government. In sum, we cannot say the government's allegation is so baseless as to be sanctionable.

*II. Purpose of the government's affirmative defense.*

Takota also claims the government's defense was presented for an improper purpose and thus violates RCFC 11(b)(1). In support of this claim, Takota relies primarily on a distinction between FAR 52.232-5 and the actual certification language included in the payment applications form supplied by the contracting officer, which Takota submitted to the government. Takota contends that the language in the certification imposes a higher standard than the FAR and that the government's pleadings, which repeat the certification's language, intentionally misrepresent the FAR.

As a preliminary matter, we note it is certainly not appropriate to sanction defendant's counsel for this error, which occurred nearly two years

---

[7] Takota subsequently revised the invoice to eliminate its mobilization costs and redistributed those expenses by increasing other line items. Both parties acknowledge this was an acceptable method of recovering mobilization and demobilization costs under the government's approved schedule of values.

[8] Takota insists that these employees were present at Montemayor's own risk and expense in anticipation of being awarded a subcontract.

before her involvement in the case. Furthermore, although defendant's counsel continued using language mirroring the certification language (and thus deviating slightly from the requirement of FAR 52.232-5), this does not strike the court as the sort of intentional bad-faith behavior that warrants sanctions.

Additionally, Takota's argument assumes the government had no rational basis for asserting its defense and, therefore, its sole purpose must be improper. As we have already discussed, however, the government based its affirmative defense on inferences that were reasonable. Accordingly, we are not persuaded that the government's purpose was to intimidate its ably-represented opponent or to unduly delay the resolution of this litigation.

## CONCLUSION

For the reasons stated above, plaintiff's motion for sanctions is denied. The clerk is directed to enter judgment for the United States and dismiss the case with prejudice. No costs.

s/Eric G. Bruggink  
Eric G. Bruggink  
Judge